Thank you very much. Please be seated. Good morning to everyone. We are ready to hear argument this morning in the case of Porter v. Zook. Mr. Lee, glad to hear from you. Thank you, Your Honor, and may it please the Court. I propose to focus the argument today on the two related but distinct claims alleging juror partiality and a third Brady claim alleging that the State concealed evidence that supported Mr. Porter's account of the crime. It's important, I think – What evidence specifically is that? What evidence are you focusing on? That they concealed evidence of the victim's prior conduct as a law enforcement officer. Okay, thank you. It's important to realize with all of these claims that they were dismissed as a matter of law, that Mr. Porter has never had an opportunity to develop facts in support of his claims or to confront evidence that was – contrary evidence that was considered in his claims or to have any of those claims resolved or disputes in those facts resolved. The actual bias claim, Your Honor, is the first one I'd like to discuss. On remand, the District Court found that there was an adjudication of the merits of this claim based on a finding, and we challenge a lot of things about that finding. But given that there was a finding that the State Court made that Mr. Porter had presented no admissible evidence that the juror was biased, and then applied that finding from the claim in which it was made to the overlooked substantive claim alleging juror bias, and the District Court believed that if you took that finding and applied it to the Smith v. Phillips claim, that the State Court would have to have dismissed the claim as a matter of law. That belief is wrong as a matter of law in Virginia. In Virginia, we cite the case Kearns v. Hall. The petitioner need not present admissible evidence in order to be entitled to a hearing on claims of juror bias or misconduct. So the presumption or the application that the District Court made is patently wrong as a matter of Virginia law, could not provide a basis for presuming an adjudication on the merits. And without an adjudication on the merits, the unanimous Supreme Court decision in Johnson v. Williams applies, and Mr. Porter is entitled to an unencumbered opportunity to have his claim heard in Federal court and a Smith v. Phillips hearing. Wasn't it in the discretion of the District Court as to whether or not to hold an evidentiary hearing? Yes, it was. Okay. So what standard do we use to review that now? Is it abuse of discretion or de novo? It would be de novo here because the court below dismissed it. It offered a de novo alternate consideration of the claim and dismissed the claim as a matter of law. That decision itself is also clear error. The court there said that it had to dismiss the claim because the only facts of bias were the statements attributed to Juror Treacle in the Sattler affidavit, and these did, quote, not indicate that he was biased. I think on their face that they do indicate that he was biased, but the court didn't consider any of the other evidence of bias in ruling on this motion to dismiss the fact that Juror Treacle had concealed the evidence, the fact that he had revealed it to the other jurors. All the evidence about the direct and emotional link between the law enforcement communities of Norfolk and Chesapeake, none of that was considered in the court's de novo addressing of this. Moreover, it never even cited Smith against Phillips. It never applied its, you know, abbreviated finding to the standard in Smith. And finally, it certainly didn't apply the motion to dismiss standard and presume true Porter's well-plaid allegations and reasonable inferences therefrom. It simply seemed to have conducted its own hearing without the parties and assigned certain credibility findings to the juror that are irrelevant on a motion. What's an example of a credibility determination the court made? Well, in more than one instance it said that Juror Treacle's behavior was honest and forthright. And, you know, that's not certainly what, that's contrary to what Mr. Porter pled, directly contrary to what Mr. Porter pled. And the district court doesn't know Juror Treacle, never seen him, never had any interaction with him, and certainly we never had any opportunity to. Could he look at the record and make that determination from the record and say that was an honest answer to the question? No, and certainly not. No, no, no. I mean, he could do that. You might think he was wrong to do it, but why couldn't a judge do that? I don't know. Go out and look at the record, and the answer was, the question was asked, and it was answered straightforwardly. You may not think that applies in this case, but can a judge do that? No. There has to be an evidentiary hearing in every case? No, Your Honor, no. So then your answer to me seems to be the other way, that it is possible for that to happen. Your Honor, I don't mean to suggest there needs to be a hearing in every case, but we are here on a motion to dismiss standard where our allegations are presumed true. And the facts here are that Juror Treacle was told about the circumstances of this crime, who the victim was, where the crime took place, et cetera, and then knowing his brother was in law enforcement, concealed that from the court. Would you say that a court can't make a determination that someone was honest ever, or you just say they can't do it in this case? In this case, Your Honor. And so the remedy here under Johnson is an unencumbered opportunity to have his claim heard, and under Smith against Phillips, it's a hearing at which questions of actual bias can actually be addressed and findings can be made, Your Honor, as you point out. I'm not clear on your position on the affidavit. Is it your position that at a hearing the district court could consider that affidavit? Yes, Your Honor. And why is it admissible? It would be admissible at a hearing about actual bias, one, to show knowledge of his brother, concealment of his brother during voir dire, and also as an answer to the question, if his brother had been, if he had revealed his brother's employment in law enforcement and been asked how that might affect him and his consideration of evidence, that he would have answered that question as he did in the affidavit. But how can, under Rule 606B, how is it admissible, the part where he discusses sort of his mental processes during deliberations, how is that admissible under 606B? Well, the affidavit doesn't actually talk about deliberations. He talks about during the trial testimony, while he's listening to evidence. But more importantly, the application of that information would come from the question, you know, what would have happened if this question had been revealed? I understand the relevance to the claim, but I don't understand how you get around 606B. I do understand that it would be quite relevant, but there seems to be a problem. Right. Well, Your Honor, I don't claim that we get around 606B. It applies. And we cannot come in and ask Juror Treacle, you know, how this impacted him in his deliberations. And why can you bring out an affidavit where he explains how it impacted him during the deliberations? Well, he wasn't talking about during deliberations. He was only talking about when he was listening to the testimony. So you think 606B just doesn't, so you could, it doesn't apply until you get to the part. That's your answer, that it's because he's referring in time to the part where he was processing the evidence and not the part where he made up his mind? Yes, Your Honor. It shows that, again, it shows knowledge of his brother, concealment, and then he's thinking of his brother during the trial. And no more than that. I'm not saying that, you know, the part about him being very emotional had a big impact on it. I think 606B can control that. But that part of the affidavit still could come in to show knowledge, concealment, and awareness of his brother during the trial. The McDonough claim is the second claim related to this. I want to go back to that. Beyond that affidavit, if somehow usable, and I'm not sure that it is, but that he was thinking about his brother, what else did you have to show that there was a problem? What else is there? I mean, people think about things. You bring, my goodness, doesn't almost every lawyer I've ever heard charge a jury go, you bring your common sense and your experience to the jury. They do. And the court warns them not to form any decision on the relevant facts in this case. But you don't say you're a blank slate, you're an automaton, and don't you think about anything while you're listening to this. You want them to listen to it and synthesize information in light of their experience, don't you? There's something wrong with that? Your Honor, I don't want to make more of this affidavit than is on its face, I think. We're not claiming that the affidavit is the only piece of evidence that would be presented at a hearing. The evidence needs to be developed of bias, and we've been unable to do that. And what else do you have to offer? Do you have anything else that you offer is what I'm asking you? Well, I think the part of it. Or is it just a claim we need a hearing? By the way, we've heard you say you want a hearing. We got that down, but we're asking. Well, let me put it this way. I don't think you can dismiss or deny this claim without allowing Mr. Porter an opportunity to develop evidence of bias. I think the evidence is pretty strong, but I don't want to bore this Court with that argument. If my second argument makes the point that you cannot reject this claim without giving him a hearing under Smith v. Phillips. The McDonough claim was dismissed by the State Court by assigning a technical interpretation of the question to the juror and then finding that there was no opportunity whatsoever for the juror to respond and supplement that answer with a complete and honest answer. And that decision is based on an unreasonable determination of facts. And it's also an unreasonable application of Phillips. Why is that so? It seems to me your argument is based on you wish or you argued that a different question was actually asked, which would be tell us any and all law enforcement officers in your family. Now, it may be not the way you would like the question to be answered, but why wasn't that an honest answer to the question? Tell us, do you have any relative who works for the police? Yes, I do. I have a nephew. All right. Can you be fair? Yes, I can. Okay. I have two answers to that, Your Honor. The first is the context and manner in which the voir dire was conducted. And the second is the nature of the question itself. So the first, this voir dire was a very open, inviting voir dire. Jurors are asked to raise their hands to answer questions. They also raise their hands to ask questions of counsel. They raise their hands and ask questions for counsel to clarify the questions that they were being asked. I know that. That may be true, but that doesn't mean somebody is dishonest if they don't do that. Well, in this context, Your Honor, the idea that there was no other opportunity to respond to this question, jurors raised questions and said, you know, I forgot to answer in this earlier question, Juror Weinberg said, I told you that my wife and I were lawyers, but I forgot to mention to you that my brother is also a lawyer. So I wanted you to know that before. So a lawyer said that? Huh? So a lawyer said that? Yes. I got the question, but I'm a lawyer. Let me tell you, lawyer, you should ask a little more broadly and let me answer a little more broadly. Right. That's commendable, but I think sometimes what happens is, and the reason they say no reason to respond is how the conversation followed. You have a nephew who's, I think it was a nephew, who's a police officer. Can you be fair? Yeah, sure I can be fair. And move on. I mean, don't really what you wish had happened would have been if the lawyer said, tell me any and all people you're related to who are law enforcement officers. And then once the witness had answered, say, is there anybody else? That's the way you want it to have happened. Well, I think that's probably the way you and I would have done it. But I do think in the context in terms of the reasonableness here, immediately after Juror Treacle answered his question, within a page of transcript, the next answer was a person who gave a multiple person answer, said, my father-in-law is Assistant U.S. Attorney. I have two friends who are correctional officers in Connecticut. Three pages later. There's a standard at voir dire, and I've conducted many of them, 12, 13 years worth. People don't ask precise questions. And sometimes jurors will think the next day and go, you know, it dawned on me that I actually know that person through family or something. But the point is, did it make the person, the juror, dishonest? I don't know what that means either. Your time might be up. I don't think so. Well, your Honor, I think my point here is about the reasonableness here. Five jurors. Wait one second. What is that noise? Is it some construction work or something? Do you know? Wait one second. You're not losing any time for this. Thank you, Your Honor. Okay. Congratulations for solving it. Don't come back in and say I have no idea. Come back and say you're welcome, Your Honor. Okay. You didn't lose any time. Go ahead. Thank you, Your Honor. In talking about the reasonableness here of this. But I'm saying that doesn't make a person dishonest. Do you think the juror was dishonest? Is that your argument? I do think the juror was dishonest. And you point to what is your strongest evidence that the juror was dishonest in the voir dire? That veneer members were given the details of this crime. The charges, the victim, the location. He knew his brother was in law enforcement from the neighboring location. He concealed that from the court and from the parties on voir dire. And then once he was on the juror, he revealed it to the jurors on voir dire. I think that's evidence of bias. I think that's evidence of dishonesty. And I think here what we're talking about is whether this technical interpretation of the question is reasonable. It's fair to say five jurors gave answers to the questions regarding, referring to their brothers. And this is something that Juror Treacle sat and heard all of this. But the standard isn't what the best answer is. The standard isn't what the lawyer gave an answer to in a voir dire. It's whether or not it was reasonable. And exactly, Your Honor. And I know you're just arguing that it wasn't reasonable. Isn't there also a very broad question asked of him? I mean, I think have you or any member of your family is a pretty broad question. But the juror was also asked, do any of you know any reason whatsoever why you cannot give a fair and impartial trial to the Commonwealth and to the accused based on blah, blah, blah? And he said no then. Your Honor. What are we to make of that? And there were multiple of those questions asked. And the warden's brief, page 18, concedes that these kind of catch-all questions are opportunities to respond to this. But how does that question end? Isn't that question, do you know of any reason you couldn't be fair? Right? That's how that question ends because that's a catch-all question you ask. Okay, in case I missed something, is there any reason you can think of that you couldn't be fair? Is the question, is there any reason that I might think you couldn't be fair? That's not the question. The question is, is there any reason you think you couldn't be fair? But the court clearly looks at those questions as opportunities to respond. In Conaway, the court counted that catch-all question as an opportunity to respond. Isn't this exactly like Conaway? It is. I've been waiting for you to mention Conaway. I mean, wasn't it almost on all fours where they, I can't remember exactly what the question was, but something like, do you know anyone involved in this trial? And the juror gives one person but not a second person. Yes. It's the exact same thing. They answer, technically, honestly, I do know that one person. They don't mention the other person. They don't clarify when they get the open-ended question at the end. And we say it is unreasonable under AEDPA to say that that didn't violate the first prong of McConaughey. Yes, Your Honor, and that goes to the second point that I was going to raise. This question, the nature of the question in context, it's exactly Conaway. And this court found that the state court's failure to recognize these circumstances as satisfying the first prong of McDonough was unreasonable. That was the decision in context. So what happens at the second prong? That's my question for you. I'm just assuming for a moment, and without sort of judging the question, but assuming you could get past the first prong of McDonough, what happens at the second prong? Aren't you just back to needing a hearing to show that there would have been prejudice that would have justified excusing this juror? Well, I think we're at the same point where this claim could not be dismissed or denied without a hearing based on that point. I believe that the question there is whether there is a valid for-cause challenge. That's the question under the second prong of McDonough. Would that be that had he said his brother was on the police force, you think as a matter of law he would have to have been dismissed for cause? I think just to put a fine point on it, Your Honor, because I know this doesn't matter, that simply the fact of being on law enforcement may not be a basis. No, that's not what my question was. I said the fact that he had a brother who was in law enforcement under the facts of this case, had that been stated, do you think that fact itself as a matter of law would have disqualified the juror? In the context of this case, yes. Because of the location, the two- What if he'd said my brother is there, but I absolutely can be fair? That would be, that could not be a basis for dismissing this claim as a matter of law. Well, no, no, no. Could the judge, if he said that, he said my brother, he'd answer the question as fully as he wanted him to and said my brother is on the neighboring police force. And then he's asked, of course, the follow-up question. Got that. Now, in light of that, can you be fair in this case? And he goes, I absolutely can. Now, in the standard that he would have to be dismissed, do you think he would have to be dismissed under those circumstances? It's a valid, the question is a valid basis for a forecast challenge. In Virginia, this is the standard applied by the District Court in Michael Williams. If there's any reasonable doubt about a juror's qualifications, then all doubt must be resolved in favor of the accused. But the point is, are you saying that the standard is if there's a valid basis for a forecast challenge or if the forecast challenge would have to be granted? Valid basis. You don't think it would have to be granted, do you? You don't think these facts, under my hypothetical, you don't think a judge would have to dismiss this juror for cause if the juror goes, my brother is there, I love my brother dearly, but yes, sir, I understand the law, I can be fair. You said the juror, I'm asking, let me just be clear, the judge could see him as a juror. The question would be before the judge then. So the judge can consider the answer to that question and can find the same for the juror. I'm saying the judge could see them under that scenario, correct? That's correct. But it doesn't mean that there's not a valid basis for a forecast challenge. And here I think in the facts of this case, I think it's strongly likely that a forecast challenge would be struck because they changed venue, basically just to get away from the Tidewater error in the problem. But that doesn't mean that this juror, no, no, no, no, that's not what that's all about. The change of venue is a general discussion of the environment and the settings. That doesn't mean that an individual person can't be fair. That doesn't mean that. It's not for the judge to decide in light of the facts and that person's response and that person's reaction. Absolutely, the judge has to make that finding. I'd like to mention. Can I just ask you a question before you leave this? So I just want to make sure I understand the way your two arguments fit together. Under your actual bias claim, you want a hearing. You think that your client is entitled to a hearing. Under the McDonough claim, do you think you're entitled to relief without a hearing? We do, but we don't think the claim could be denied without a hearing. And the hearing would be into whether if he had responded honestly, there would have been a valid basis to excuse him? Yes, yes. I'd like to ask, very briefly, the Brady claim and say here, we know there's a straight, this is a straightforward Brady claim. We know that Officer Reeves was convicted or found guilty of malicious destruction by an internal police investigation. We know his application to the Norfolk police required him to report any disciplinary actions. We know he had a personnel file. We know when he arrived in Norfolk, he was not allowed to take place in the certified officer training program that would have provided for an abbreviated training, only three months, and then he could be out on the street earning full wages. But instead, he was made to serve the full six-month period at the academy plus an additional three months. I see my time is up, Your Honor. It has. Now, let me say, you reserved a little bit of time. Would you like to take some of that time right now, a few minutes, to make this argument? Yes. I consider it made. It won't be that you can't make it, follow up. The government is now going to notice you're making that argument here. So you will be able to finish your argument, but do you want to take some time now or just reserve all eight minutes? I'll make one very quick point. Okay. You'll use some of your time and we'll let you do it. Okay. And this is related to the State Court's decision to dismiss this claim as a matter of law, and it based that claim on the prosecutor's disclaimers, a letter from the City of Norfolk, and partially on the Court's assessment of Reeve's personnel file. The prosecutor's disclaimers never mentioned what the Norfolk Police Department had, so they couldn't provide a basis for dismissing a Brady claim under Kiles and Strickler. The Norfolk letter actually confirmed that the Norfolk Police did have information, so it couldn't provide the basis for a finding that the Commonwealth had nothing under Brady and Kiles. And finally, the third part was the Supreme Court described what was in Reeve's personnel files, even though those files have never been provided to the State Court or any court or any of the parties, in this case, at any time. So that's an unreasonable dismissal of that claim, both under D-1 and D-2. Thank you, Mr. Lee. You'll have five or six minutes left. Thank you very much. Mr. Dalligan, when you're ready. Thank you. May it please the Court, good morning. My name is Matthew Dalligan. I'm a senior assistant attorney general here this morning on behalf of the warden. I'll address the juror claims that have been discussed by Counselor Mr. Porter, and if I'm permitting, move to the Brady claim he opened as well. Starting, as the State Court did with the McDonough claim, the Supreme Court of Virginia found that Porter, in his state habeas petition, had failed to demonstrate that the juror had failed to answer honestly the material question during voir dire. That finding under McDonough disposes of the claim. Unless he's found to be dishonest in his answers in voir dire, there is no claim as described for relief under McDonough. And how do you distinguish Conaway? Conaway is a different sort of allegation of dishonesty. The claim is, the omission claimed in that case, was that they had deliberately omitted a reference to one of the prosecution's key witnesses when they knew one of the other key witnesses. In this case, and this court found on that record that it was unreasonable to believe that they could not have understood the question to have elicited a question about both. In this case, it's slightly different. It's not a question about witnesses or that close a relationship to the facts of the case. It's a question about his relationship to family members. No, no, but they're just saying that the facts are different. I mean, the principle of Conaway is that it's unreasonable to hold that when a juror is asked, do you know anyone who fits this description and offers up one of the two people, the juror knows that that's not a dishonest answer. Like, I don't really see it turning on who those two people were. It's that when someone says, do you know anyone, you're supposed to say everyone you know. What I'm suggesting Conaway turns on, is distinct from this case on, is the nature of the question and answer in the context of the record. In Conaway, this court looked at the question, the one answer, the lack of a second answer, and the relationship of that question of voir dire to the merits of the case. This is not a claim. Well, because that was the witness. Here, it's even more closely tied to the merits of the case, because the question was whether a family member, any family member, was a law enforcement officer, and the law enforcement officer in this case was the victim, not just a witness. So it's very closely, it's more closely tied to the merits of the case than, arguably, than Conaway. It is not so closely tied to the merits of the case in this, in Mr. Porter's claim, I'd argue, because it does not affect the evidence in the case. It's a claim at most of how he would perceive the evidence. You claim that the Conaway case is closer to the function of the jury, because it's a question of passing on testimony, which is the core function of the jury. Yes, Your Honor. In other words, the jury is going to have to decide that witness's credibility, and that witness is a witness because what they have to say is important to and relevant to what the juror has to know, whether or not that distinction holds up or not. I take it that's where you're going with that argument? That's the front end of the argument. The second distinction I see between this case and Conaway, Your Honor, is what is the second prong of McDonough, that had they answered honestly, that would have been a challenge for cause, not a basis for a challenge for cause. When you say it's the front end, we all started talking about the first prong, but I think, as Judge Harris pointed out, really, let's look at the second prong, because you don't think you necessarily have to decide the first prong, do you? I think the claim can be properly dismissed under either prong, yes. Right. Let's talk about that. Then how would we do that, though? McDonough, and I can see the language in McDonough, is whether to respond by the valid basis for a challenge for cause. I don't suggest, I don't believe it does here. We have a unique, perhaps not unique, but we have a set of facts that allow us to look at this question a little differently than in some cases, because we know from other witnesses what counsel would have done had they gotten a different answer from this juror. With any of those other jurors, did they have relatives who were as geographically linked to the crime as this juror's brother was? Those who gave, some didn't give a geographic link, so I'm not certain of them, but the ones who did, no. No, okay. So there's no evidence of the defense passing on somebody who said, I have a relative in law enforcement in the relevant jurisdiction, next door, possibly participated in the manhunt. No, what there is is evidence of every time they got a response, whether they had a relative in law enforcement, however close or a close personal friend in law enforcement, the only answer was, given that relationship, would you be able to stand impartial in this cause? And they approved everyone who answered, yes, I would. We know the answer he gave to the first question in this case, that he would stand impartial knowing about the police officer in Northern Virginia. We know that that was a sufficient answer to counsel. Counsel did not go into any probing question about any specifics of the relationship. Once the relationship, the only question was, could they stand impartial? They could. He said he could. He also said he would stand impartial and knew no reason that he could not stand impartial when he was asked in the sum-up question. In the case Mr. Lee cited in his Rule 28 letter, that question is taken by the federal courts to elicit any actual bias. Were there any? No. It didn't elicit any answer from him that he would be compromised or would not stand impartial because there's no evidence that he could not stand impartial. And the fact that Because he withheld the evidence that he could not stand impartial. We don't know that because he didn't answer that his brother was also in law enforcement. He didn't answer that way. He didn't answer that way. I think it imposes more than the record supports to describe that as withholding the question. As we pointed out, he was more specific in his pleadings before he was in state habeas in describing the brother's job. The brother was employed by the sheriff's office. The brother's job was transporting prisoners at the jail. The district court rejected that argument, right, said there's just no way a juror reasonably could have believed that his brother didn't count as law enforcement. Well, the district court found that under Virginia law, he was defined as law enforcement. I thought the district court said something more like it would not be reasonable for a juror to understand that question to exclude the brother. My recollection was that was based on the statutory definition. The brother is Pernell Treacle. Is that the brother? Yes. The brother certainly. I mean, his affidavit says, I am a deputy sheriff with the Chesapeake Sheriff's Office. I've been so employed in this law enforcement position for the past nine years. That's the brother's understanding of his job, yes. What I'm suggesting is it's not enough that he failed to identify him to conclude that he deliberately concealed his brother's identity, either because he didn't understand his law enforcement or because in the press of ordeal he omitted. I could find the district court. I'm sorry. I'm holding you up, but I just wanted to go back to this. The district court says that it is hard to believe that the juror could have not realized that such a position constituted law enforcement in any capacity, and they're not relying on any statutory definition. They're just saying that doesn't make any sense. Obviously, the brother was in law enforcement. That's the district court. So do you think that's wrong? Do you think that's a clearly erroneous finding? I'm not prepared to say it's clearly erroneous, but I don't think it matters ultimately to the analysis of whether he was dishonest or not. An inadvertent omission, whether he misunderstood law enforcement or understood it perfectly well and inadvertently omitted him, is dishonest. Whether this was inadvertent, whether the district court was clearly erroneous and there was a misunderstanding about the definition of law enforcement, that's what you do at a hearing. Why are we sitting here trying to figure out whether this was a matter of inadvertence or an actual effort to kind of slide something by? Because we have the, unlike the 9th Circuit case that this court noted in the remand opinion, we do have in this case a finding by the state court that is owed deference, that there's no evidence that he was dishonest in concealing it. It's just that there wasn't a false answer to this question for McDonough purposes, but that is different from, and we've said this in several cases, that is not the same thing as saying that this couldn't give rise to questions about whether there had been an effort to kind of answer technically but not fully. It can be technically correct but not a complete answer. I mean, that's kind of the way the Supreme Court said that in Williams v. Taylor. Williams v. Taylor was another case where there was no finding in the state court to which was owed deference on this issue. And I suggest this is a different case because of that finding. And as I answered to Judge Shedd, if the court believes there are unresolved factual questions as to whether he honestly or inadvertently admitted the answer to the question, the question then is whether he would have given rise to a challenge for cause. And our answer is this Court can affirm the dismissal on the second problem of McDonough because he answered the only question that was ever put to jurors about relationship to law enforcement already once, no suggestion that he answered it dishonestly, that it would not affect impartiality. Same questions that I ask other counsel, I ask Mr. Lee. Is your understanding that there just has to be a valid basis to raise a challenge for cause or that there must be a basis for a successful challenge for cause? Do you understand the question I'm asking? I think I do, Your Honor. Which is? I think by the language in McDonough of a valid basis, I think they're asking for more than a formal ability to raise a challenge for cause. I don't think you have to have one that is an automatic success, but I think you have to have more than a technical right to raise the challenge for cause. I think the Court has to look into whether there's some substance to the challenge or in this case if he's already certified that he's not impartial because of his relationship, it's not valid. The trial judge maintains the right to decide whether to strike for cause, correct? Yes, Your Honor. But there would be cases in which an appeals court could go, that clearly is a strike for cause and you were just wrong as a matter of law, correct? Yes, Your Honor. Does it have to rise to that level? Because if it doesn't, what do we do with the discretion that the trial judge has in striking for cause? I think, again, the language in McDonough of a valid basis for a challenge for cause puts the burden on the appellate court to look beyond the fact of whether he would have standing to make a challenge for cause and find if there is a substantial basis for the challenge for cause. And I submit in this case there's not because of the answers he already gave to other questions. So you then take it that had he been asked, had people been notified about his brother, he would have been asked the fact, we now know you have a brother. Considering that, a brother in law enforcement in neighboring county, considering that, could you be fair in this trial? That's what he would be asked. Yes. And then you think that the answer that he gave tells us what answer he would have given. Yes, I can. I think the answer he gave combined with the answer he gave at the conclusion, he knew of no reason that he could not stand impartial. Might that have been some follow-up questions? Like did he by any chance participate in the manhunt for this killer like so many of the other law enforcement officers in his county? Or did he know the victim who lived in the same county? I mean, it's possible there would have been follow-up questions, right? It's possible there would have been follow-up questions, but there were not follow-up questions in any of the other relatives. Right, but again, none of the other relatives lived in that area. And we don't know what the answer is to those. There's nothing in the record now about the answers to any of them. Do we even know whether the brother participated in the manhunt? I do not. I don't believe it's in the record. That would be something a hearing could establish. But the manhunt actually took place in New York State, was where he was ultimately located. I thought people around this area, that's where he was located, but people around the area of the crime were activated to begin a manhunt. Correct? Shortly after the murder he was searched for in the Norfolk area. So in a hearing we could find out whether the brother was involved in any of that. Not we, but the district court could find out. Did the district court consider any of the Townsend factors in determining whether or not to hold an evidentiary hearing? It did not do so explicitly, I don't believe, but it did find that the record was sufficient in its view to answer the question. Isn't the court required to consider those factors? The court is required to consider first whether under Cullen-Penholster, it's required to consider first whether in light of 2054 deference and reliance on the record, the claim can be dismissed on that basis. If it can, then there's no basis for an evidentiary hearing under Cullen. I just want to make sure I understood your answer about whether the district court considered the Townsend factors. You said not explicitly, but it did so implicitly. How? How did it implicitly consider the Townsend factors? It did accept the, even after its analysis under 606B, that the affidavit was not going to be admissible evidence at any hearing on the merits. It nevertheless, in the alternative, reviewed it to see if it sufficed in its view to show any bias on the part of the juror and concluded that the innocuous statements did not, that Porter's evidence did not come to the point, even in the light most favorable, to justify a hearing. So because of the district court's ultimate conclusion, we are to assume that it considered the Townsend factors? Did the district court ever even mention Townsend? I don't recall it mentioning Townsend by name in its opinion, no, Your Honor. Are you surprised you asked about Townsend? Either you are surprised or you're not surprised. I'm surprised that the Townsend is the focus of it. The district court's discussion on whether there was a post-trial hearing gave what arguably is a more petitioner-friendly ruling relying on the standards developed in the federal criminal field. It's not the focus of it. It's one of the focuses of it. We've been, this has been going, the oral argument has been going on for a while now. It's one of the focuses of the issues here. To answer the question, if I can complete, the district court's reference to the standards for post-trial hearing on bias referenced the standards under federal criminal trials, which I think, if anything, is more favorable to the petitioner's claim than Townsend, and he still found it wanting. Under his discussion of the actual bias, Mr. Lee argues that the district court did not consider the concealment. It in fact found that the juror did not conceal. He didn't consider, he argues, the link between Chesapeake and the other jurisdictions, but he did, the district court did find that the juror had been asked whether any of the publicity surrounding the crime and the subsequent investigation had affected any jurors. He wasn't aware of any of the publicity. The court did consider that. You're on the actual bias claim now? Yes. Is it your position that that was adjudicated on the merits by the state court? It's my position that the state court made a relevant finding in adjudicating the related ineffective assistance to counsel claim. Was that a yes or a no on whether it was adjudicated on the merits for purposes of that? The claim was not, the district court found the claim was not adjudicated on the merits. We've not cross-appealed that. Okay. Thank you. But the state court's findings, whether they were on the adjudication of that claim or elsewhere, are still entitled to deference under 2054E. And it's my interpretation that the district court's holding in our argument that that finding in the ineffective assistance to counsel claim that Mr. Porter advanced no admissible evidence of bias is a finding of fact to which the district court owed deference in its review of the claim. I just have a question about the intersection of kind of this ineffective assistance of counsel claim with the question here. The question under actual bias, right, is just whether the defendant is entitled to a hearing. But the question under ineffective assistance, when you're trying to show prejudice, you have to show that the outcome of the proceeding would have been different. You basically have to show you would not only are you entitled to a hearing, but you would prevail if you got that hearing. So those just seem like two totally different questions to me. I don't know if I'm being clear, but I don't understand exactly what we can do with a finding that I don't think he's shown he was likely to prevail at a hearing, when the question for us is whether he's entitled to a hearing in the first place. Do you know what I'm saying? They just seem like different legal questions to me. They're different, but they are related questions. They're related. But the standard seems different in a way that really matters. And what the district court also pointed out is that other than the affidavit from, and here's the affidavit at that. It's not an affidavit from the juror. But other than the affidavit, Porter had, even on remand, yet to project what sort of other evidence might be available at a hearing. The district court, of course, didn't find the affidavit itself was evidence of bias. But it would not be admissible, we argue under 606B, at any sort of hearing in any case. And Mr. Porter has yet to project in the district court or through today what other sorts of evidence he could put on to show bias. The most he identified in answer to the court question about what might come out of the various affidavits is the fact of the brother's employment and the fact, I assume more from the record than the affidavit, that he did not mention the brother's employment at trial. That, as we've been discussing, does not by itself show bias. It's analyzed differently, of course, from the Madonna question, but under an actual bias standard, the mere fact that he was related to a sheriff's deputy does not show he was actual biased in the cause. And so the petitioner has yet to project what evidence, other than the inadmissible affidavit that he's proposed shows bias, that would establish bias and would come in at a hearing. Can I ask you a question about the admissibility of the affidavit? We said in Conaway, there's language in Conaway suggesting that even if an affidavit wouldn't be admissible at the hearing, you may be able to use it to show that you're entitled to a hearing. And we said that it would be a classic catch-22 if you have to submit admissible evidence to get an evidentiary hearing when the defendant is seeking a hearing because he can't get admissible evidence without subpoena power or discovery. So why doesn't that govern here? There may be some way in which Conaway is distinguishable, and I'm just wondering your thoughts on that.  is that the prohibition under 606B extends the forecast of evidence through affidavits. So what should we do with Conaway? I think Conaway, if I'm remembering the passage correctly, suggested there may be cases where that's appropriate to look past the restrictions of 606B. Might this be one, since Conaway was about the exact same thing? Leaving aside the distinctions I believe apply between this case and Conaway, I'd argue that this is not one. As the District Court pointed out, even seeking this sort of affidavit from the juror violates the purposes of 606. I'd suggest, contrary to what Mr. Lee had, I think, suggested, it is something beyond deliberations. The first clause is that he may not testify of any statement or incident that occurred during deliberations, but it goes on to prohibit the effect of anything on the juror or another juror's vote or any juramental processes concerning the verdict or indictment for a grand juror. So I think the prohibition of 606B is broader than when the case is given to the jury for deliberations. It's any of his mental processes during the trial that 606B is meant to protect from further inquiry. Take a moment to turn to the Brady issue raised by Mr. Lee if there are no other questions at this point on either of the juror claims. Mr. Lee, of course, will address it further in rebuttal, but to this point had focused on the nondisclosure of the information, or more specifically on his allegation that the information was known to the prosecution and not disclosed. And his claim that it was known to the prosecution depends in large part on two prongs that, as far as I can tell, were not raised in the State Court case. His claim that Mr. Reeves not participating in the abbreviated program shows that they knew something about his background, which disqualified him for it, and the claim, based on the website, that they would have investigated his prior. But what the State Habeas Court really had before it, as it acknowledges, is a statement by the prosecution that they did not have any of this information and a statement from the Norfolk Police Department in response to a FOIA claim that they did not have the information. Mr. Lee has given a different reading to the FOIA letter than the State Court or District Court did, and he can argue that, but it doesn't mean that the reading the State Court gave the FOIA letter was unreasonable, which is the standard he has to overcome at this point, not only to prevail or to set it aside, but to show it's wrong by clear and convincing evidence. The FOIA letter, which is at J, 1771, referenced three broad requests for information and said that the Apical Department, this was to the City generally, not to the Police Department, was how he addressed the FOIA request. Apical Department has no record response for your request for any background check or misconduct records for Officer Reeves' tenure with the Baltimore Police Department. Mr. Lee has argued different interpretations of that sentence, but he has not shown that the interpretation given by the Supreme Court of Virginia is unreasonable, that they have no records about this, and did, in fact, refer them to the Baltimore Police Department for those records. Mr. Porter's petition, though, demonstrates... Your answer is he asked the wrong person? No, my answer is that the Supreme Court of Virginia relied reasonably on the statement by the City of Norfolk and by the prosecutor that there were no records relating to any misconduct during his tenure as a police officer in Baltimore, and that, therefore, there were no such records in the prosecution's direct or constructive possession, and, therefore, there was no Brady violation. Are there any such records? I'm not aware of any, but I'm largely limited to the same record the Supreme Court of Virginia was. There are records in Baltimore. The FOIA letter referred him to Baltimore, and Mr. Reeves, Mr. Porter's state habeas petition shows that, with a little diligence, they were able to discover a fair amount of detail about both the incidents they claim were concealed. This police department didn't have any records of misconduct. If there were records which were misconduct, I'm just putting that label on them, they were in another police department. Yes, and apparently there were... We've disputed whether they show misconduct or whether there's a different conclusion to be drawn from them, but clearly the records about these two incidents that he's discussing with the Baltimore Police Department, he submitted some of them, but he's also demonstrated in doing that that they were available to counsel through the exercise of diligence. They were publicly available at the time of trial. Is that what you're saying? They were available to counsel without the aid of subpoena or other discovery tools. And at the time of trial? Yes, they predated trial, so... Yeah. Yes. In fact, some of them are newspaper articles about the same incident, which would clearly be publicly available. But what he also had not addressed, and I don't think he addresses very... So your argument is the Norfolk Police Department answered truthfully and had, and the prosecution slash Norfolk Police Department, had no obligation to seek records they didn't have to make available to the defense. Yes. Particularly, as Kyle describes and as Strickler describes, jurisdiction distant from the prosecution, in this case in another state. But I suggest, too, that because it's available on diligent investigation by the defense at trial, it's not chargeable as a Brady violation for failure to disclose. I also argued that because the evidence it shows was invisible in the absence of any evidence of self-defense, I see my time has expired. May I finish? Yeah. I'll give you 30 seconds to wrap up the argument. Yeah. No, wait. We have questions. Sure. I'm so sorry. Just before you wrap up, I just wanted to go back and clarify something because I may have misunderstood. I asked whether it was your position that on the actual bias claim, that that claim had been adjudicated on the merits by the Virginia court. And your answer to that is no, it wasn't adjudicated on the merits. Is that right? I believe it was adjudicated on the merits in the Supreme Court for the reasons I put forth in the pleading in the district court. The district court ruled against us, and we have not crossed appeals, so I think I'm bound by his finding. You're saying the district court held that the actual bias claim was not adjudicated on the merits? That was my position. They ruled against us, and we have not crossed appeals, so I believe I'm bound by the district court's finding. Okay. Sorry. As to the Brady, if I may wrap up. Because the evidence of these two incidents supposedly shows the character of the defendant under Virginia law, that would not be admissible in the absence of a claim self-defense. The trial court having found there was no basis, even believing Mr. Porter's testimony for a claim of self-defense, it would not have been admissible at trial, and he can't show any prejudice that the Brady information was not material. For all those reasons, and as stated in our brief, we ask the judgment be affirmed. Thank you very much. Mr. Lee, you have a few minutes left. Thank you, Your Honor. Your Honor. I'll be as brief as I can, Your Honor. First of all, I just wanted to mention for the court, we did a quick check, and the Townsend factors were not mentioned by the district court in either its opinion dismissing the McDonough claim or its opinion dismissing the actual bias claim as a matter of law. Secondly, the Michael Williams decision mentioned by the court provides a basis for finding the state court decision to be unreasonable under D1, because in that case the court directly addressed the application of a technical interpretation of the question within a McDonough claim and remanded for an evidentiary hearing. So relying on a technical interpretation to dismiss the claim as a matter of law would be an unreasonable application of Michael Williams. In fact, contrary to Michael Williams, because the state court never addressed that. Finally, on the Brady claim, this was dismissed by the state court, finding that the Commonwealth had no evidence favorable to Mr. Porter. And counsel mentioned the letter, the Norfolk Police letter, that this letter actually confirms that the Norfolk Police Department does have information pertinent to the request that Mr. Porter made, but it's protected by FOIA, and we're not going to give it to you. And then it mentions, this is at 1771, Your Honor, then it mentions two records that are records of the Baltimore Police Department's background checks and the Baltimore Police Department's misconduct records, and says we don't have any background checks that the Baltimore Police Department did, and we don't have their misconduct records. If you want those, go to Baltimore. We weren't asking for the Baltimore records. We were asking for records that were part of the background check that the Norfolk Police Department did of Officer Reeves before accepting him as a law enforcement officer in Norfolk. And I'll just add, finally, the question about whether this records were available, these Baltimore Police personnel records were not available to Mr. Porter. The information that we got, we did get from looking at court records litigation, and some of the litigation had some references to some of these investigations in it, but we never got the records of the investigations themselves. We've been deprived of any of that. We could have got that through a Brady claim, or they could have got a trial with subpoena, but the information that we got was not the Baltimore police records, and that's still being concealed from us. And I'll just add, finally, that the court addressed something very similar to this in the Juniper case recently, and it was the same jurisdiction, the same Assistant Commonwealth Attorney, the same Senior Assistant Attorney General representing that no records exist. I think as a matter of law, these claims can't be dismissed, and their dismissal can't be upheld without further investigation. I think it would also be a matter of prudence and justice to allow for further inquiry as well. Thank you, Your Honor. Let me ask one question about this kind of case. It's not specific to this fact. Why, in your experience, do jurors talk to people, investigators, about their role in the trial after the fact? I mean, if it's used at all, it's only used to attack the juror. I mean, just a real-world question I'm interested in. Well, Your Honor, and I'll give you my experience. I think they're honest. You think this dishonest person was honest? I think jurors talk to people because, you know, they just talk to people. I know that. I mean, some don't. But you're using this honest answer to assert that he was dishonest. Well, you know, in the context of the case, that's clearly true. I mean, we know there was concealment here. I kind of think your answer is what I think it is. People, they won't honestly answer what you ask them about is what I think. Your Honor, you had mentioned in this case jurors were discouraged from talking, and we actually had a very difficult time getting most jurors to talk. Maybe they sit as observers in appeal cases and hear how they're talked about. Maybe. I don't know. Ms. Salih, you finished your argument. We thank you for it. I notice that you're, we know that you're court-appointed, and we acknowledge that and thank you for your role. You did a fine job here for your client. Thank you, Your Honor. Okay. Before we, thank you very much. Before we step down, the panel wants to acknowledge that we have some students from the College of William & Mary, and Professor Sasser has brought them here. Is that correct? Do I have his name correct, Professor Sasser? Is that right? Or did Professor sleep in this morning? He's right there. He looks like a student. Okay. All right. Thank you. Let me say this. You may or may not know, but all the members of this panel either now teach or have taught, and so we appreciate you bringing the students here. We actually have scribbled out a note to ourselves up here. We're taking under advisement an order from the court that you give all these students an A in the class, so we'll let you know. But thank you for bringing them. At this point, we'll step down to greet counsel. You ready to go to the next case? Straight to the next case. And go directly to the next case. Please rise.
judges: Dennis W. Shedd, Stephanie D. Thacker, Pamela A. Harris